IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Shea Emanuel as Parent and Natural Guardian of N.B., a Minor,<br><br>Plaintiff,<br><br>vs.<br><br>The Walt Disney Company,<br><br>Defendant. | Case No. 5:20-cv-4639 |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant The Walt Disney Company and Disney Store USA, LLC ("Disney")[1] respectfully move this Court to dismiss plaintiff's amended complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

**I.      STATEMENT OF FACTUAL ALLEGATIONS**

Plaintiff's amended complaint, which is brought on behalf of her son N.B., contains a single count of disability discrimination under Title III of the Americans with Disabilities Act ("ADA"). Doc. 6, Am. Compl. ¶ 1. Plaintiff and her 7-year-old son—who the amended complaint alleges has autism—were not permitted to enter Disney's store in the Lehigh Valley Mall in Whitehall, Pennsylvania (the "Whitehall Disney Store") on August 20, 2020, because plaintiff refused to have her son wear a face covering, in violation of Disney's policy. *Id.* ¶¶ 1, 16, 20. The Whitehall Disney Store adopted this policy, consistent with advice from public

---

[1] The defendant identified in plaintiff's amended complaint, "The Walt Disney Company," is not the correct party; the owner and operator of the Disney store at issue is Disney Store USA, LLC.

health officials and emergency room doctors who exhorted Americans to wear masks, to protect the health and safety of its guests and employees and to reduce the risk of spreading and contracting COVID-19.[2]

## II. STATEMENT OF THE QUESTIONS INVOLVED

1. Whether plaintiff's amended complaint should be dismissed because plaintiff again failed to sufficiently plead a requirement of her Title III claim that the request to allow her son to enter the store without a face covering is "reasonable" under all the circumstances.

2. Whether plaintiff's amended complaint should be dismissed because plaintiff still has not alleged sufficient facts to establish that her requested modification of Disney's policy is "necessary" to afford her son access to the Whitehall Disney Store, as required by Title III of the ADA.

3. Whether Disney's face covering policy is a legitimate safety requirement essential for the safe operation of the Whitehall Disney Store, thus warranting dismissal of plaintiff's amended complaint as a matter of law.

4. Whether plaintiff's request to waive Disney's policy at the Whitehall Disney Store poses a direct threat to the health and safety of Disney's other guests and employees, which

---

[2] Disney is not alone: major U.S. retail trade groups support mask requirements for this very reason. *See, e.g.* Letter from Brian Dodge, President, Retail Industry Leaders Association, to Joseph Biden, President-Elect (Nov. 10, 2020), *available at* https://rilastagemedia.blob.core.windows.net/rila-web/rila.web/media/media/pdfs/letters%20to%20hill/2020/biden-task-force.pdf ("[L]eading retailers voluntarily implemented mask requirements in their stores and have called on governors to implement statewide mandates. . . . The science is abundantly clear and has proven the public and personal benefit of wearing a mask."); Press Release, U.S. Chamber of Commerce, U.S. Chamber Praises President-Elect Biden's Message on Importance of Masks and Stands Ready to Work with Coronavirus Task Force (Nov. 9, 2020), *available at* https://www.uschamber.com/press-release/us-chamber-praises-president-elect-biden-s-message-importance-of-masks-and-stands ("As medical evidence has shown, wearing masks in public settings, especially when it is not possible to maintain social distancing, is critical to preventing the spread of COVID-19").

is a complete defense to any claim under Title III and therefore requires dismissal of the amended complaint with prejudice.

### III. SUMMARY OF ARGUMENT

In less than a year, COVID-19 has infected and killed thousands of people in Pennsylvania and nearly two million around the globe. U.S. deaths per day from COVID-19 now exceed by 30 percent the number of American lives lost at Pearl Harbor, D-Day or 9/11, and significantly more Americans have died from the virus in ten months than in four years of combat in World War II. Although the United States now has two approved COVID-19 vaccines, the rate of vaccinations has been slower than predicted and so far the "surge upon a surge" due to the holidays has outpaced the benefit from the new vaccines. In short, this country continues to suffer through an unimaginable tragedy which is only getting worse. In fact, the country lost more than 42,000 people during the first 14 days of January (which is the highest for any two-week period during the pandemic), and the Centers for Disease Control and Prevention ("CDC") projects nearly 100,000 more deaths in the next three weeks.

While our understanding of the virus is still evolving, at least this much is known: the virus "spread[s] easily from person-to-person . . . [b]etween people who are in close contact with one another . . . [t]hrough respiratory droplets produced when an infected person coughs, sneezes, breathes, sings or talks."[3] That is why the CDC and countless public health experts strongly recommend wearing face coverings in public settings to prevent the spread of the coronavirus. At this time, a face covering is still recognized by public health experts as the most effective means of preventing transmission of the virus from one person to another.

---

[3] *How To Protect Yourself & Others*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/prevention.html (last updated Dec. 31, 2020).

Consistent with this guidance, Disney's face covering requirement at the Whitehall Disney Store was designed to reduce the risk of transmission of COVID-19 within its store. It is a legitimate safety requirement with which all guests must comply, including those with a disability. Enforcement of this policy is particularly critical because the Whitehall Disney Store is located in an indoor mall, which increases the risk of spreading COVID-19 due to decreased ventilation.[4] This Court should take judicial notice of these undisputed facts for purposes of the instant motion.[5] When considered in light of the governing statutory language and implementing regulations, these facts clearly support dismissal of this case.

Plaintiff alleges that Disney discriminated against her son in violation of Title III of the ADA by refusing to allow him into the Whitehall Disney Store without a face covering. Under the terms of Title III, there are four independent grounds for dismissing plaintiff's amended complaint, any one of which is sufficient for the Court to grant this motion: (1) plaintiff's request to modify Disney's policy is unreasonable on its face; (2) plaintiff does not allege that a waiver of Disney's policy is necessary to afford her son access to the store; (3) Disney's policy is a legitimate safety requirement; and (4) modifying the policy as plaintiff requests poses a direct threat to the health and safety of its guests and employees. No visitor of a retail establishment,

---

[4] *Deciding to Go Out*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/daily-life-coping/deciding-to-go-out.html (last updated Oct. 28, 2020).

[5] The public health guidance regarding COVID-19, the highly infectious nature of the disease, the statistics regarding COVID-19 cases and deaths in Pennsylvania, and mitigation measures (including the scientific evidence that masks reduce the spread of the virus) are public records which are generally known within the Court's jurisdiction, and their authenticity cannot be reasonably questioned. *See*, *e.g.*, *Mesa Golfland, Ltd. v. Ducey*, 2020 WL 5632141 (D. Ariz. Sept. 21, 2020) (taking judicial notice of statistics regarding COVID-19 cases and deaths, the existence of the COVID-19 pandemic, and COVID-19 mitigation measures including the use of masks); *Joffe v. King & Spaulding LLP*, 2020 WL 3453452, at *7 (S.D.N.Y. June 24, 2020) (taking judicial notice of CDC guidance regarding the infectiousness of COVID-19 and the efficacy of social distancing as a mitigation measure).

not even one with a disability covered by the ADA, has the right to take the lives of other people into his own hands and risk infecting other guests and employees with a deadly virus.[6] Congress foresaw this type of situation and insured that safety would take precedence over requests for accommodation by explicitly providing—in the statutory language of the ADA— a complete defense in cases like this one.  Therefore, no violation of law occurred here and plaintiff's amended complaint should be dismissed in its entirety.

Plaintiff has now had two opportunities to adequately plead her Title III claim but has come up short each time.  It is clear that plaintiff does not have the factual support to do so and Disney respectfully requests that the dismissal be with prejudice.  *See*, *e.g.*, *Bonacci v. Maher*, 2016 WL 5661753, at *10 (W.D. Pa. Sept. 30, 2016) (dismissing case with prejudice where "[p]laintiff, having filed an Amended Complaint, has already had two bites at the apple in this case . . . [i]t would be inequitable and futile to allow a third bite at the apple").

## IV.   ARGUMENT

A complaint should be dismissed under Rule 12(b)(6) where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  To survive a Rule 12(b)(6) motion, a complaint must allege both a cognizable legal theory and "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Aubrey v. City of Bethlehem*, 466 F. App'x 88, 91 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  This "facial plausibility" standard requires a plaintiff to allege facts "that allow[] the court to draw the reasonable inference that the defendant

---

[6] To the plaintiff, the mask requirement at the Whitehall Disney Store is a temporary and allegedly "unpleasant" discomfort for her son; however unpleasant it may be, it is far outweighed by the potentially devastating impact of transmitting COVID-19 to others, which could also result in the store having to close altogether.  *See infra* Sections IV.C and D.

5

is liable for the misconduct alleged." *Alja-Iz v. U.S. Virgin Islands Bd. of Educ.*, 625 F. App'x 591, 592 (3d Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678).  Although the Court should accept factual allegations as true, pleadings that merely offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Consequently, the Court should only accept as true well-pleaded facts, not plaintiff's legal conclusions.  *Twombly*, 550 U.S. at 570.  It is not enough to plead a set of facts "consistent with" a claim to relief:  the "factual enhancement" must be enough to "nudge [the] claim[] across the line from conceivable to plausible." *Id*. at 557, 570.

Under Title III of the ADA, plaintiff must plausibly allege that her requested modification is both "reasonable" under all the circumstances, and "necessary" to afford her son access to the Whitehall Disney Store.  42 U.S.C. § 12182(b)(2)(A)(ii); *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001).  As shown below, plaintiff has failed to do so.  And even if plaintiff had plausibly alleged that the requested modification was both reasonable and necessary, there are two safety-related defenses which, if established, trump any claim of discrimination.  *Masci v. Six Flags Theme Park, Inc.*, 2014 WL 7409952, at *9 (D.N.J. Dec. 31, 2014).  The first safety defense involves circumstances where the requested accommodation must be denied due to safety concerns.  28 C.F.R. § 36.301(b) ("Safety.  A public accommodation may impose legitimate safety requirements that are necessary for safe operation"); *Masci*, 2014 WL 7409952, at *9; *Castelan v. Univ. Studios, Inc.*, 2014 WL 210754, at *6-7 (C.D. Cal. Jan. 10, 2014) (safe operation of a ride "might require excluding persons with disabilities").  Safety requirements mandating face coverings are clearly justified here and need only "be based on actual risks [rather than] mere speculation, stereotypes, or generalizations about individuals with disabilities." *Masci*, 2014 WL 7409952, at *9 (citing 28 C.F.R. § 36.301(b)).  The second safety

6

defense involving "direct threats" applies when the requested accommodation poses a direct threat to the health or safety of other customers or store employees, just as plaintiff's request not to wear a mask would endanger the safety of other persons in the Whitehall Disney Store. *See Masci*, 2014 WL 7409952, at *9.

In short, plaintiff's amended complaint is deficient under *Twombly* and *Iqbal* for four independent reasons, any one of which warrants dismissal of this action.

### A. Plaintiff's Amended Complaint Should Be Dismissed Because Plaintiff Has Not Alleged That the Requested Modification Is Reasonable

"The test to determine the reasonableness of a modification is whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program," based on the "totality of the circumstances." *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 647, 650 (E.D. Pa. 2016) (quotations omitted); *Easley v. Snider*, 36 F.3d 297, 305 (3d Cir. 1994) (concluding that plaintiff's requested modification to force the State "to provide attendant care services to all physically disabled individuals, whether or not mentally alert," was unreasonable because it would "possibly jeopardiz[e] the whole program"). "In deciding what's reasonable, facilities may consider the costs of such accommodations, disruption of their business and *safety*." *Baughman v. Walt Disney World Co.*, 685 F.3d 1131, 1135 (9th Cir. 2012) (emphasis added).

Plaintiff is asking Disney to create an unsafe environment that poses an increased risk of exposure to (and transmission of) a deadly virus for its other guests and employees. This is plainly unreasonable given the circumstances. As discussed *infra*, COVID-19 is a highly infectious disease which continues to exact a horrible toll in this country on a daily basis. Public health experts agree that wearing face masks is critical to curbing the risk of infection through community spread. Disney implemented its face covering policy after analyzing the guidance

and recommendations of public health authorities, including the CDC and Pennsylvania Department of Health ("DOH"). It concluded that all guests must wear face masks to provide a safe environment for every person in its store. Contrary to plaintiff's allegations, social distancing protocols are not a substitute for wearing a face covering, particularly when inside a store. *See* Am. Compl. ¶ 32-34. The CDC has never stated that masks and social distancing are an "either/or" option. Rather, pursuant to CDC guidance, they are safety protocols to be used in combination with each other to slow the spread of COVID-19.[7]

The "essential nature" of Disney's face mask policy is protecting the health and safety of all guests and employees, whether or not a person has a disability. *Anderson*, 185 F. Supp. 3d at 647-48. Plaintiff's requested modification of this policy would "jeopardiz[e] the whole program" by creating an unsafe environment for guests and employees. *See Easley*, 36 F.3d at 305. Plaintiff has not and cannot allege any facts to the contrary. Because her requested modification is facially unreasonable, plaintiff's amended complaint must fail.

### B. Plaintiff Also Fails to Allege Facts to Establish That the Relief Requested Is Necessary to Afford Her Son Access to the Whitehall Disney Store

Plaintiff's amended complaint must also contain allegations that would plausibly show that a waiver of Disney's face mask policy is necessary to afford N.B. access to the Whitehall Disney Store. *Martin*, 532 U.S. at 682. The Supreme Court in *Martin* went out of its way to clearly define what Congress meant by "necessary" in this context, explaining that a requested

---

[7] *Coronavirus Disease 2019*, *COVID-19 Alert*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/your-health/need-to-know.html (updated Jan. 5, 2021) (advising to wear a mask, stay at least 6 feet apart, and avoid crowds); *see also Considerations for Wearing Masks*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover-guidance.html#:~:text=A%20mask%20is%20NOT%20a,touching%20or%20removing%20your%20mask (updated Dec. 18, 2020) ("[m]asks should still be worn in addition to staying at least 6 feet apart, especially when indoors around people who don't live in your household").

modification is not "necessary" even if the plaintiff finds it "uncomfortable" or "difficult" without the modification, so long as access by other means is not "beyond [his] capacity." 532 U.S. at 682.

Here, plaintiff alleges, in conclusory fashion, that N.B. was "physically and mentally incapable of wearing a face covering for more than a few seconds because of his ASD" and that "[a]llowing N.B. to enter the Whitehall Disney Store without a face covering was necessary for him to enjoy fully the experience of shopping in the Whitehall Disney Store in the same manner and to the same extent as non-disabled guests who were able to wear a face covering." Am. Compl. ¶¶ 28, 36. The conclusory allegation that entering the store mask-free was "necessary" because N.B. is "incapable" of wearing a face covering is simply an effort to parrot the statutory requirements which is plainly insufficient under *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 548; *Iqbal*, 556 U.S. at 678 (recognizing that pleadings which merely offer "labels and conclusions . . . will not do"). The only specific fact alleged by plaintiff—that "the sensations N.B. felt were so *unpleasant* that they caused him to immediately rip the covering off his face"— does not support his conclusory allegations. Am. Compl. ¶¶ 11, 21, 28 (emphasis added).

Although N.B. may have disliked the feeling of a face mask, that fact does not permit a reasonable inference that with proper planning, preparation and encouragement, it was beyond his ability to wear a face covering, as required under *Martin*.[8] Indeed, the obvious and most

---

[8] Children with autism often show a negative reaction to certain clothes and/or textures when they are first introduced. Parents and clinicians use a variety of strategies, with tremendous success, to improve the ability of children with autism to tolerate non-preferred activities, for the very reasons discussed in an article cited by plaintiff. *See infra* for a discussion of the Harvard Health Blog article cited in paragraph 10 of plaintiff's amended complaint. This exact principle applies here where the family was visiting a favorite place of public accommodation—a Disney store—which has a requirement that could pose a challenge for the child. It was obvious before N.B. visited the store that there would be a face covering requirement, and therefore plaintiff cannot claim it was "impossible" to wear a mask when no planning was done prior to the visit.

reasonable inference from the allegations in the amended complaint is that plaintiff simply accepted her son's initial reaction and preference not to wear a mask as static and unchangeable. She did not even attempt to follow Disney's face mask policy and give her son a chance to enjoy the store by finding a way to comply with the safety requirement. *See* Am. Compl. ¶ 10.

A child psychiatrist's post on the Harvard Health Blog, which is discussed in plaintiff's amended complaint, only further supports this conclusion by demonstrating that N.B. is not incapable of wearing a face mask. Am. Compl. ¶ 10, n. 1.[9] Notably, the article discusses that wearing a mask is "uncomfortable" and makes communication "more difficult," but never says it is beyond the capacity of children with autism to wear a mask. To the contrary, the article explains that "[t]here are a number of strategies, including advanced preparation using visual aids, gradual practice, and modifying the sensory experience, as well as online resources, that can be used to help individuals with ASD and their caregivers rise to meet these challenges" of adjusting to wearing face masks.[10] In short, the article undercuts plaintiff's conclusory allegation that the requested accommodation is necessary because it demonstrates that N.B.'s alleged discomfort in wearing a face covering is not a need or requirement of his autism, but rather a challenge that can be reasonably overcome with the help of commonly used interventions. It may take more time, and it may be more difficult, but parents are doing it every day.

---

[9] *See Pryor v. Nat'l. Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (explaining that "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered" in ruling on a Rule 12(b)(6) motion to dismiss).

[10] These types of strategies are common features of Applied Behavioral Analysis (ABA) therapy which is the undisputed gold standard for teaching children with autism to manage unpleasant stimuli and tolerate non-preferred activities. While the Court need not rely on this point in granting the instant motion, it provides important context for the article cited in plaintiff's amended complaint.

Because plaintiff fails to plausibly allege that a modification of Disney's face covering policy is necessary to afford N.B. access to the Whitehall Disney Store, her amended complaint should be dismissed on this ground alone. *See Coleman v. Phoenix Art Museum*, 372 F. App'x 793 (9th Cir. 2010) (affirming district court's dismissal of Title III claim where plaintiff failed to properly plead that the requested accommodation was necessary).

      **C.**      **Plaintiff Has Not and Cannot Allege Facts Establishing That Disney's Face Covering Policy Is Anything Other than a Legitimate Safety Requirement Necessary for the Safe Operation of Its Store**

Disney's face mask policy at the Whitehall Disney Store is a legitimate safety requirement that is applied to all guests visiting the Whitehall Disney Store during this deadly pandemic. Disney's policy is grounded in the guidance of public health authorities, including the CDC and Pennsylvania DOH, which universally recommend that people wear face coverings in public settings because they help prevent the spread of the coronavirus.[11] In fact, CDC Director Dr. Robert Redfield has testified that "[w]e have clear scientific evidence [that masks] work, I might even go so far as to say that this face mask is more guaranteed to protect me against

---

[11] *See, e.g.*, *Scientific Brief: Community Use of Cloth Masks to Control the Spread of SARS-CoV-2*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/more/masking-science-sars-cov2.html (updated Nov. 20, 2020) (recommending "community use of masks . . . to prevent transmission" of COVID-19, including "to reduce the emission of virus-laden droplets . . . and [to] reduce inhalation of these droplets by the wearer"); Press Release, CDC, CDC Calls on Americans To Wear Masks To Prevent COVID-19 Spread (July 14, 2020), *available at* https://www.cdc.gov/media/releases/2020/p0714-americans-to-wear-masks.html ("CDC Press Release") (reporting on two case studies "showing that adherence to universal masking policies" prevented COVID-19 transmission at a hospital and a hair salon); *How To Protect Yourself*, *supra* note 3; Pa. Dep't of Health, Order of the Secretary of the Pennsylvania Department of Health Requiring Universal Face Coverings (effective July 1, 2020) ("Pa. Mask Order"); Pa. Dep't of Health, Frequently Asked Questions at 5-6 (updated May 1, 2020) ("Pa. FAQs"); Pa. Dep't of Health, Order of the Secretary of the Pennsylvania Department of Health Directing Public Health Safety Measures for Businesses Permitted To Maintain In-person Operations ¶ B(6) (effective Apr. 19, 2020) ("Pa. Business Safety Measures").

11

COVID than when I take a COVID vaccine, because the immunogenicity may be 70 percent and if I don't get an immune response, the vaccine's not going to protect me, this face mask will."[12]

In light of this public health guidance, plaintiff has not and cannot allege that Disney's policy is designed for any reason other than to protect against COVID-19 and the risk it poses to public health. The virus has already infected and killed hundreds of people in Lehigh County where the Whitehall Disney Store is located, and the number of new cases is soaring with no end in sight.[13]

Plaintiff alleges that Disney's policy is contrary to the Pennsylvania DOH's orders and guidance (Am. Compl. ¶¶ 7-9, 14),[14] but nowhere do these public pronouncements require Disney to allow a guest with a disability to access its store without a face mask. Rather, they state that a public accommodation "may" allow a guest "who cannot wear a mask due to a

---

[12] Peter Sullivan, *CDC Director Says Masks More Guaranteed To Work than a Vaccine*, The Hill, https://thehill.com/homenews/administration/516686-cdc-director-says-masks-more-guaranteed-to-work-than-a-vaccine (Sept. 16, 2020, 12:11 PM).

[13] As of December 2, 2020, Lehigh County reported 22,216 confirmed cases of COVID-19 and 545 deaths. *COVID-19 Data for Pennsylvania*, Pa. Dep't of Health, https://www.health.pa.gov/topics/disease/coronavirus/Pages/Cases.aspx (last visited Jan. 9, 2020). When comparing these figures to those provided in footnote 12 of Disney's initial motion, the number of confirmed COVID cases has nearly doubled and the number of COVID-related deaths has increased by approximately 40% over the course of only one month.

[14] The Pennsylvania DOH recently updated its order regarding face coverings, which the Court should also judicially notice for the reasons described *supra*. *See Updated Order of the Secretary of the Pennsylvania Dep't of Health Requiring Universal Face Coverings*, dated November 17, 2020, https://www.governor.pa.gov/wp-content/uploads/2020/11/20201117-SOH-Universal-Face-Coverings-Order-Update.pdf. The updated order, *inter alia*, explicitly permits businesses to "decline service to individuals who are not wearing a face covering or claiming to have a condition preventing them from wearing a face covering or an alternative to a face covering, so long as they attempt to provide a reasonable accommodation." *Id*., Section 4(A)(4)(a).

medical condition" to enter the premises without a mask.[15]  This is an exception to the *Commonwealth's* requirement that masks must be worn in public and says nothing about whether specific places of public accommodation, such as retail stores, are permitted to enforce a different standard, namely a face covering requirement without a medical exception.  In addition, the order's permissive language should be interpreted to give Disney discretion to determine whether it is safe for someone without a mask to enter its store.  *See, e.g.*, *Bastardo-Vale v. Attorney Gen.*, 934 F.3d 255, 263 n.4 (3d Cir. 2019) (en banc) (interpreting the word "may" in the federal asylum law to "convey[] permission for the agency to act in a particular way but . . . not [to] mandate that the agency act only in that one fashion"); *Castillo v. Ebbert*, No. 3:18-cv-00911, 2019 WL 4410513, at *5 (July 25, 2019) (recommending denial of habeas petition where, *inter alia*, "the clear language of the regulation" at issue used "the permissive 'may' rather than the mandatory 'shall,' and thus allowed but did not require prison to provide prisoner with his requested extension to file an appeal), *adopted* No. 3:18-cv-00911, 2019 WL 4413248, at *1 (M.D. Pa. Sept. 13, 2019).  Plaintiff's attempt to read into the DOH orders and guidance a mandatory requirement that Disney allow guests with disabilities to access the Whitehall Disney Store without a mask is contrary to the plain language of those orders (*see Bastardo-Vale*, 934 F.3d at 263 n.4; *Castillo*, 2019 WL 4410513, at *6), and in any event would contravene federal disability law which explicitly permits a place of public accommodation to enforce a safety requirement against *all* guests.

Although Pennsylvania has determined that it will not impose fines on businesses if they make an exception for medical reasons, it has never suggested that businesses must recognize the same exception or that any disability rights law requires an exception.  Because Disney's policy

---

[15]  *See* Pa. Mask Order, *supra* note 13.

is a legitimate safety requirement which must be applied to all guests (*Masci*, 2014 WL 7409952, at *9), and because plaintiff has failed to allege any facts that plausibly demonstrate that COVID-19 does not pose a safety threat or that masks are not scientifically proven to lessen that threat, Disney has a complete defense to plaintiff's Title III claim. As a result, plaintiff's amended complaint should be dismissed as a matter of law.

### D. Plaintiff's Requested Modification Poses a Direct Threat to the Health and Safety of Others at the Whitehall Disney Store

Under the related direct threat defense, a place of public accommodation may exclude an individual with a disability if not doing so would pose "a direct threat to the health or safety of others." 42 U.S.C. § 12182(b)(3) (defining a "direct threat" as "a significant risk to the health or safety of others that cannot be eliminated by a modification of policies, practices, or procedures or by the provision of auxiliary aids or services"); 28 C.F.R. § 36.208(a); *Haas v. Wy. Valley Health Care Sys.*, 553 F. Supp. 2d 390, 397-98 (M.D. Pa. 2008) (citing *Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287-88 (1987)). In a common application of this principle,[16] courts have allowed companies to require all employees to wear safety equipment even where employees with disabilities have claimed they could not wear such equipment.[17] Because this Court can

---

[16] *See Dahlberg v. Avis Rent a Car Sys.*, 92 F. Supp. 2d 1091, 1105 (D. Colo. 2000) (noting that several courts "have imported the analytical framework employed in cases decided under title I of the ADA, which prohibits disability discrimination in employment, into the title III context"); *see also Bailey v. Bd. of Commissioners of Louisiana Stadium & Exposition Dist.*, 2020 WL 5309962, at *57 (E.D. La. Sept. 4, 2020).

[17] *See, e.g., Holmes v. Gen. Dyns. Mission Sys.*, 382 F. Supp. 3d 529, 532 (W.D. Pa. 2019) (concluding that the ADA does not impose a requirement on the employer to "exempt an employee from a requirement to wear safety equipment that is intended to protect her from serious injury, and to protect the company from financial harm, because she has a physical condition that prevents her from wearing the safety equipment"); *Canavan v. City of El Paso*, 2010 WL 11601100, at *6 (W.D. Tex. July 14, 2010) (judgment for employer where plaintiff-firefighter with asthma who requested use of an inhaler could not show that he was a "qualified individual," because his job required that he wear a self-controlled breathing apparatus with a

take judicial notice of CDC guidance and medical literature addressing the safety risks associated with not wearing a face covering, dismissal based on the direct threat defense is appropriate here at the pleading stage. *See Onken v. McNeilus Truck & Mfg., Inc.*, 639 F. Supp. 2d 966, 978-79 (N.D. Iowa 2009) (granting motion to dismiss plaintiff's ADA claim because his diabetes causes hypoglycemic episodes that pose a "direct threat to the safety of others" at his place of employment).

The U.S. Supreme Court has long recognized that infectious diseases—like COVID-19—pose a "direct threat" to the health and safety of others. For example, in *School Board of Nassau County v. Arline*, the Court considered a discrimination claim under the Rehabilitation Act brought by a teacher with tuberculosis who alleged she was suspended from work because of her disease. 480 U.S. at 276-77. The Court established a four-factor inquiry for assessing the existence of a "direct threat" under the Rehabilitation Act, which courts have since applied to assessing the applicability of the direct threat defense under the ADA. *E.g.*, *Haas*, 553 F. Supp. 2d at 397-98. The four factors are: (1) the nature of the risk; (2) the duration of the risk; (3) the severity of the risk; and (4) the probability of the risk. *Haas*, 553 F. Supp. 2d at 397-98 (citing *Arline*, 480 U.S. at 287-88). These factors were later codified in Title III's regulations along with a fifth factor—"whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." 28 C.F.R. § 36.208(b).[18]

---

face mask, and "removing the mask could be difficult and, in an actual fire emergency, could endanger himself and others").

[18] 28 C.F.R. § 36.208(b) ("In determining whether an individual poses a direct threat to the health or safety of others, a public accommodation must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: The nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk").

Application of the direct threat factors here demonstrates that plaintiff's requested modification undoubtedly poses a direct threat to the health and safety of others. First, the nature of the risk "involves the life and health" of the Whitehall Disney Store's other guests and employees. *Haas*, 553 F. Supp. 2d at 399. "There is no pre-existing immunity against this new virus, which has spread worldwide in an exceptionally short period of time, posing a serious public health risk." *Geller v. Cuomo*, 2020 WL 4463207, at *1 n.1 (S.D.N.Y. Aug. 3, 2020) (denying plaintiff's motion for preliminary injunction in First Amendment challenge to New York City's restrictions on non-essential gatherings, and taking judicial notice of the health risks of COVID-19). Courts throughout the country have concluded that a person with symptomatic, pre-symptomatic, or asymptomatic COVID-19 poses a threat to the safety of others. *E.g.*, *In re RFC & ResCap Liquidating Trust Action*, 444 F. Supp. 3d 967, 971 (D. Minn. 2020) (finding good cause to permit trial to continue by videoconference given COVID-19's "impact on the health and safety of the parties and witnesses"); *Joffe*, 2020 WL 3453452, at *7 (taking judicial notice of CDC guidance regarding the infectiousness of COVID-19 and the efficacy of social distancing as a mitigation measure, and recognizing that COVID-19 "is a potentially fatal illness with the ability to spread through asymptomatic or pre-symptomatic carriers, with no approved cure, treatment, or vaccine").

Second, the duration of the risk will exist until there is no longer a public health crisis and Disney can rescind its temporary face covering policy. *See Joffe*, 2020 WL 3453452, at *7 (acknowledging that "the unique health risks posed by COVID-19 are as present today as they were in May"). Third, the severity of the risk is high. COVID-19 is a highly infectious disease that can be spread by people who are symptomatic, pre-symptomatic, or asymptomatic and the result can be prolonged illness or death. *See Joffe*, 2020 WL 3453452, at *7 (taking judicial

notice of "basic facts about COVID-19's spread"); *McGhee v. City of Flagstaff*, 2020 WL 2309881, at *3-4 (D. Ariz. May 8, 2020) (taking judicial notice of CDC and other public health guidance regarding the contagious nature of COVID-19).

Fourth and finally, while the precise probability of the risk is unknown, courts have repeatedly acknowledged that the virus "is spreading very easily and sustainably between people." *McGhee*, 2020 WL 2309881, at *3 (quotations omitted); *accord Murphy v. Lamont*, 2020 WL 4435167, at *1-2 & n.2 (D. Conn. Aug. 3, 2020); *Geller*, 2020 WL 4463207, at *1. "[E]veryone is at risk of getting COVID-19." *McGhee*, 2020 WL 2309881, at *4 (quotations omitted).

Plaintiff alleges that "N.B. posed no direct threat of physical harm to himself or any other person inside the Whitehall Disney Store, with or without a face covering" because "N.B. was neither infected with COVID-19 nor exhibiting any symptoms of COVID-19." Am. Compl. ¶¶ 24-25. Even accepting as true plaintiff's allegation regarding the lack of "symptoms of COVID-19," it is insufficient for plaintiff to plead that her son does not pose a direct threat to others if he does not wear a mask while at the Whitehall Disney Store. As described *supra*, Courts and public health authorities have consistently found that people who are asymptomatic or pre-symptomatic can and do spread the virus. *E.g.*, *Joffe*, 2020 WL 3453452, at *7 (taking judicial notice of CDC guidance regarding asymptomatic spread); *McGhee*, 2020 WL 2309881, at *3-4 (same). In this case, Disney determined that plaintiff—just like all other guests of the Whitehall Disney Store—must wear a face mask within the store because there is no fail-safe way of identifying whether or not someone is infected with COVID-19 and because not doing so was inconsistent with public health guidance and posed a direct threat to the health and safety of

others.  This determination was based on safety alone and not due to plaintiff's alleged disability or any other reason.

Plaintiff's requested modification to Disney's face covering requirement poses a direct threat to its guests and employees.  There is simply no question that COVID-19 is a highly infectious disease that has infected and killed nearly two million people, and that wearing face coverings significantly reduces the risk of infection due to community spread of the virus.  Because plaintiff has not and cannot make any allegations to rebut these undeniable facts, her Title III claim should be dismissed.

**V.      CONCLUSION**

For all the foregoing reasons, Disney respectfully requests that plaintiff's amended complaint be dismissed with prejudice.

Dated:  January 15, 2021                                            Respectfully Submitted,

/s/ *Paul M. Thompson*
Paul M. Thompson (Pa. Bar No. 82017)
Kerry Alan Scanlon (*pro hac vice* forthcoming)
Jeremy M. White (*pro hac vice* forthcoming)
McDermott Will & Emery LLP
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000
pthompson@mwe.com
kscanlon@mwe.com
jmwhite@mwe.com

*Counsel for Defendant The Walt Disney Company and Disney Store USA, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on January 15, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all Counsel of Record.

/s/ *Paul M. Thompson*
Paul M. Thompson